■ STEVEN W. MELNICK, Appellant, v ANN MELNICK, Respondent.—Judgment, Supreme Court, New York County (Loren Brown, J.), entered on October 30, 1987, unanimously affirmed, without costs and without disbursements. Concur—Murphy, P. J., Carro and Smith, JJ.

Asch and Rosenberger, JJ., concur in a memorandum by Asch, J., as follows: The parties were married on July 23, 1966. In June of 1980, plaintiff husband brought this action claiming that defendant wife had engaged in a course of cruel

and inhuman conduct and treatment of the husband. After joinder of issue, defendant moved for summary judgment and for dismissal of the complaint for failure to state a cause of action. The court at nisi prius, only addressing the motion to dismiss, granted it, holding that the allegations of the complaint failed to show that defendant's conduct during the marriage constituted anything more than mere incompatibility or temporary matrimonial disorder.

On a prior appeal, this court reversed, holding that in view of the long duration of the marriage, the allegations specifying physical and mental abuse were sufficient to state a cause of action (115 AD2d 416).

As we said then:

"The allegations of the complaint in this case, however, set forth four incidents of physical abuse. It is true that plaintiff has not claimed hospitalization following these incidents or that an order of protection was obtained. It is clear that the physical abuse here did not rise to the level of serious and prolonged beating, as existed in *Echevarria (supra)*.

"Nevertheless, the allegations of physical and mental abuse are sufficient to state a cause of action *(see, Sandhu v Sandhu,* 60 NY2d 866, where the wrongful conduct included the wife's slapping plaintiff, throwing objects and pouring hot tea on plaintiff, and was held to sufficiently establish a cause of action for divorce on the ground of cruel and inhuman treatment).

"Even in view of the long duration of this marriage, the acts complained of were not mere trivial occurrences. The allegations of physical abuse, and of emotional abuse, if proven, would constitute serious misconduct and not mere incompatibility *(Brady v Brady, supra; Hessen v Hessen* [33 NY2d 406], *supra)* and the complaint, therefore, states a cause of action for divorce based upon cruel and inhuman treatment." (115 AD2d, *supra,* at 417-418.)

In October 1987, the case went to trial. Only the plaintiff testified. After a short deliberation, the jury found in favor of the defendant. On this appeal, plaintiff argues that he is entitled to a judgment of divorce.

Concededly, on the basis of the instructions and the information brought out in the course of plaintiff's testimony, the verdict of the jury in favor of the wife is understandable.

Plaintiff first testified that on October 2, 1979, defendant cursed at him and hit him repeatedly in the face, arms and chest. However, on cross-examination, plaintiff testified that

although his wife's attacks left him with lacerations and welts, he never visited a physician, did not telephone the police nor did he seek to obtain an order of protection. In addition, on the night of the attacks, plaintiff did not leave the parties' residence. Plaintiff also stated that a month prior to the attacks he had been paying rent for a one-bedroom apartment in Manhattan. Moreover, he told the jury that his wife knew he was moving to the apartment in early July.

Plaintiff also testified that on October 3, 1979, his wife threw garbage and a glass at him. Two days later, defendant threw a plate at him, hitting his head, and later threw a wine glass, which missed. On cross-examination, the plaintiff testified that during this period he never called the police and continued to work and to reside with his wife at their residence. After plaintiff was reminded that he previously testified that on the evening of October 5th he left his home, he was asked where he went. He replied that he went to a "friend's house". Reluctantly, he later admitted that the friend was a woman. In addition, plaintiff stated that even though the plate had hit him on the head, he never contacted a doctor nor did he telephone the police.

Plaintiff then testified that on October 29, 1979, his wife became outraged at him. The following morning she slammed the door on his arm. The plaintiff, on cross-examination, admitted that he again did not contact a doctor or the police and did not obtain an order of protection. In fact, he "probably" came home that evening.

On cross-examination, plaintiff was then questioned about the time from the end of October 1979 through May 1980, the month he commenced this action. Plaintiff stated that in January, approximately two months after his wife allegedly attacked him, he, his wife and their three children moved into their new apartment. Also, he and his wife continued to share the same bedroom. From May 23, 1980 through September 1980, plaintiff continued to spend time in the matrimonial residence. In fact, he admitted that sometimes he slept over. In August, he and his wife together picked their children up from the bus stop upon their return from summer camp. When defendant's counsel questioned plaintiff as to his claim that his wife's conduct in October 1979 had caused him to "develop a skin reaction", he conceded that in his "adult life" he had been treated for a skin condition. He then stated that he had not been totally candid with the jury in this regard.

Lastly, plaintiff was asked about a love note that he had

written to his wife in March 1981. The letter was admitted into evidence. In it, plaintiff admitted that he lied; that he loved his wife "more than life"; and that he was dating another woman.

In sum, the jury could reasonably decide that plaintiff's testimony did not clearly establish that his wife treated him in a cruel and inhuman fashion. Although plaintiff's uncontested allegations were that the defendant verbally and physically abused him on numerous occasions, he admitted that he never contacted a doctor, never obtained an order of protection, nor did he call the police. In fact, plaintiff admitted that after the alleged attacks took place, he continued to reside in the matrimonial residence. In addition, plaintiff admitted that besides telling his wife that he was dating another woman, he also told her that he was renting a one-bedroom apartment. In short, while the jury could have rationally concluded that had the defendant actually physically and verbally abused the plaintiff, such conduct was excused (see, Passantino v Passantino, 87 AD2d 973; Mante v Mante, 34 AD2d 134, 140).

On the present state of law in New York, affirmance is mandated. It is apparent, however, the verdict of the jury, which denied the husband's action for divorce, condemns him, as well as his wife, to a marriage bed which has become a bed of nails. A factual examination of the status of this marriage makes it abundantly clear that there has been an irreparable "breakdown" of this marriage. This case presents a graphic illustration of why "dead" marriages should be recognized as such.

Until the Divorce Reform Act of 1966, every significant legislative attempt, for a century and a half, to ameliorate the divorce law of New York had been rejected. While the new law represented a substantial change from the old, the legislation contained, because of compromise, an inconsistent melange of fault and no-fault grounds. Incompatibility was accepted, to a limited extent, where separation was verified by agreement between the parties or a judgment of legal separation. As a consequence, after September 1, 1967, some "dead marriages" could be the basis for divorce. Although the legislative history of the Divorce Reform Act of 1966 seemed to establish unquestionably that mental cruelty (conduct endangering mental, as well as physical, well-being which make further cohabitation improper) constituted a basis for divorce in New York, Judges sometimes imputed their own ideas of what the test was to be. In 1974, in Hessen v Hessen (33 NY2d 406), a standard was articulated which made it more difficult

for husbands to receive divorces from their wives, although the facts were comparable.

The "breakdown" principle was widely recognized as the "decisive criterion" in many jurisdictions for legal termination of a marriage. *(See,* Freedman, Law in a Changing Society, ch 7 [1972].) Yet, today, as authorities on matrimonial law have pointed out, New York is the only jurisdiction which does not have a true no-fault divorce. *(See,* Freed and Brandes, *No More 'Messin' With Hessen',* NYLJ, Aug. 17, 1988, at 3, col 1.)

Regardless of who is at "fault" in this case, it is clear that because of the accident of their residence, both husband and wife, as well as their children, must suffer the anguish and pain of their continuing marriage. The time has come for the New York Legislature to emulate the other States and permit divorce where there has been an irreversible breakdown of the marriage.